UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

MAY 0 6 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-275-GWU

WALTER L. YOCUM,                                          PLAINTIFF,

VS:                          MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT,

## INTRODUCTION

Walter Yocum brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income.  The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.      Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4.  If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled.  If no, proceed to step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply.   Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. <u>Id</u>. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Id</u>.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Houston v. Secretary of Health</u>

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. 404.1521, 416.921.   The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term.  Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985).  The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment,"  Landsaw v. Secretary of Health and Human Services,  803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987).  The plaintiff is said to make out a  prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved.  When this happens, the Commissioner may use the rules as a framework for decision-making.  20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e).  It may often be required for the agency to consult a vocational specialist in such cases.  Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985).  Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe.  Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary."  20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b), 416.967(b).  A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual."   20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments."  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Yocum, a 48 year-old former mechanic, maintenance worker and telemarketer with a "limited" education, suffered from "severe" impairments.   (Tr. 17, 23).   Despite the plaintiff's impairments, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 23). Since the claimant's past telemarketing work could still be performed, he could not be considered totally disabled. (Tr. 23).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Yocum could return to his past work as a telemarketer, the ALJ relied heavily upon the testimony of Vocational Expert William Ellis.  The hypothetical question initially presented by the ALJ included an exertional limitation to sedentary level work along with such non-exertional restrictions as

5

(1) an inability to stand or walk for more than two hours with the assistance of a hand-held device for ambulation; (2) an inability to sit for more than six hours in an eight-hour day with normal breaks; (3) an inability to ever use the left lower extremity for pushing and pulling; (4) an inability to more than occasionally use the right lower extremity for pushing or pulling; (5) an inability to more than occasionally climb ramps or stairs, balance, stoop, kneel or crawl; (6) an inability to ever climb ladders, ropes or scaffolds or crawl; and (7) a limited ability to reach in all directions, particularly with the right upper extremity with no ability to reach overhead. (Tr. 322-323). In response, the witness reported that Yocum's past telemarketing work could still be performed. (Tr. 323). Ellis also identified a significant number of other jobs which could still be done. (Tr. 323-324). The ALJ then presented a second hypothetical question which included such factors as a limitation to sedentary level work along with such non-exertional restrictions as (1) an inability to stand or walk for more than two to four hours in an eight-hour day in 15 minute intervals; (2) an inability to sit for more than six hours in an eight-hour day in 30 minute intervals; (3) an inability to ever climb; (4) an inability to more than occasionally stoop, kneel, crouch, or crawl; (5) a somewhat limited ability to balance; (6) a limited ability to reach, push and pull; (7) an inability to lift overhead with the right shoulder; (8) a need to avoid exposure to heights, moving machinery, humidity, and vibration; and (9) an inability to operate machinery with the left ankle. (Tr. 324-325). The expert again indicated that the past telemarketing job as well as other jobs cited in response to the prior question could still be performed. (Tr. 325). Therefore, assuming that the vocational factors considered by Ellis fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The vocational factors fairly characterized Yocum's condition, as required

6

by Varley.  The initial hypothetical question was consistent with the physical restrictions identified by Dr. David Swan (Tr. 218-225) and Dr. John Rawlings (Tr. 226-236), the non-examining medical reviewers.[1]  The second question incorporated the limitations reported by Dr. Anthony McEldowney, the plaintiff's treating physician.  (Tr. 184-186, 324-325).  More severe restrictions were not reported by such treating and examining sources as the staff at Rockcastle County Hospital (Tr. 122-125), Dr. Manoochehr Mazloomdoost (Tr. 157-174), Dr. Karen Saylor (Tr. 175-177), the staff at Marymount Medical Center (Tr. 239-263), and Dr. Franklin Pence (Tr. 264-275).  Dr. Mark Carter, an examining consultant, did report the existence of somewhat more severe limitations with regard to squatting and kneeling than were presented in either hypothetical question.  (Tr. 181).  However, this opinion is outweighed by that of the treating source.  Therefore, substantial evidence supports the administrative finding that the claimant did not establish that he could not return to his past work.

Yocum argues that the ALJ erred in failing to specifically identify which of his impairments were found to be "severe."  The plaintiff was found to be able to still perform past relevant work based upon the specific physical restrictions reported by Dr. McEldowney, a treating source, as well as those of the medical reviewers.  Dr. McEldowney related his restrictions to musculoskeletal problems concerning the plaintiff's knee, back and right shoulder.  (Tr. 184-186).  The claimant also complained about problems with diabetes.  (Tr. 312).  Both Dr. Saylor (Tr. 176-177) and Dr. Carter (Tr. 181-182) indicated that this problem was poorly controlled but neither identified specific limitations.  Therefore, since the

---

[1]The medical reviewers also completed assessments of the plaintiff's residual functional capacity specifically relating to the time period prior to the expiration of his DIB-insured status in December of 1999.  (Tr. 199-217).  The restrictions were also compatible with the hypothetical factors presented to Ellis.

vocational factors considered by the vocational expert did fairly depict Yocum's condition, the Court finds the failure to specifically identify the "severe" impairments to be harmless error.

Yocum argues that the ALJ erred in failing to give great weight to the "disability" opinion of Dr. McEldowney, his treating physician.  Dr. McEldowney, on occasion, did express the opinion that the plaintiff was a good candidate for disability. (Tr. 191, 193).  However, Dr. McEldowney is not a vocational expert. As previously noted, when the physician's own specific physical restrictions were considered by Ellis, the vocational expert indicated that the plaintiff's past telemarketing work as well as other jobs could still be performed.  Therefore, under these circumstances, the Court finds no error.

Yocum argues that the ALJ did not properly evaluate his subjective pain complaints.    Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Yocum was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  An x-ray of the cervical spine at Rockcastle Hospital revealed no fracture, bony destruction, or narrowing of the intervertebral spaces. 9Tr. 125).  Somatosensory Evoked Potential response was normal as to the right and left median and ulnar nerves.  (Tr. 129).  A physical examination by Dr.

8

Mazloomdoost revealed normal muscle strength with no sensory loss. (Tr. 159). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Yocum's pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the _____6_____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE